UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 2:18-CR-140 |
| v. | ) | Judge Greer |
| | ) | |
| GERMAINE PHARMACY INC. | ) | |

**PLEA AGREEMENT**

The United States of America, by the United States Attorney for the Eastern District of

Tennessee ("USATNE"), the United States Department of Justice, Consumer Protection Branch

("USDOJ-CPB"), the defendant, GERMAINE PHARMACY INC., and the defendant's attorney,

Stephen Ross Johnson, Esq., have agreed upon the following:

1.      The defendant will plead guilty to the following count of the First Superseding

Indictment:

(a)      Count One – Conspiracy to Commit Health Care Fraud: The defendant

knowingly, intentionally, and unlawfully did combine, conspire, confederate, and agree with

others to execute and attempt to execute a scheme and artifice to defraud health care benefit

programs and to obtain, by means of false and fraudulent pretenses, representations, and

promises, any of the money and property owned by, or under the custody or control of, any

health care benefit program, in connection with the delivery of or payment for health care

benefits, items, or services, in violation of 18 U.S.C. § 1347, all in violation of 18 U.S.C. § 1349.

The maximum punishment for this offense is ten (10) years' probation, a fine not to exceed

$500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest

Page 1 of 26

Initials of Duly Authorized
Representative of the Defendant _US_

(*see* 18 U.S.C. § 3571(c), (d)), and a $400 special assessment (*see* 18 U.S.C. § 3013(a)(2)(B)), and restitution and forfeiture as appropriate.

2. In consideration of the defendant's guilty plea, USATNE and USDOJ-CPB agree to move the Court at the time of sentencing to dismiss the remaining counts against the defendant in the First Superseding Indictment.

(a) USATNE further agrees not to prosecute the defendant in the Eastern District of Tennessee for any other non-tax criminal offenses committed by the defendant that are related to the charges contained in the First Superseding Indictment in this case and that are known to USATNE at the time this plea agreement is signed by both parties.

(b) USDOJ-CPB further agrees not to prosecute the defendant in any district in the United States for any other non-tax criminal offenses committed by the defendant that are related to the charges contained in the First Superseding Indictment in this case and that are known to USDOJ-CPB at the time this plea agreement is signed by both parties.

3. The defendant has read the First Superseding Indictment, discussed the charges and possible defenses with defense counsel, and understands the crimes charged.

4. In support of the defendant's guilty plea, USATNE, USDOJ-CPB, and the defendant agree and stipulate to the following facts, which satisfy the elements of the offense. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. The defendant, USATNE, and USDOJ-CPB retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

(a) From on or about the Fall of 2016 through on or about April 1, 2018, the defendant knowingly and willfully combined, conspired, and agreed with Larry Smith ("Smith"),

Page 2 of 26

Initials of Duly Authorized
Representative of the Defendant _LS_

Alpha-Omega Pharmacy LLC. ("Alpha-Omega"), ERX Consultants LLC dba Zoetic Pharmacy ("Zoetic"), Tanith Enterprises LLC dba Medvest Management Services ("Tanith"), ULD Wholesale Group LLC ("ULD Wholesale"), Scott Roix, HealthRight LLC ("HealthRight"), Mihir Taneja, Arun Kapoor, Sterling-Knight Pharmaceuticals LLC ("Sterling-Knight"), and others to deceive thousands of patients located in the Eastern District of Tennessee and elsewhere for the purpose of executing a scheme and artifice to defraud health care benefit programs, and obtained by means of false and fraudulent pretenses, representations, and promises, not less than $24,919,254 owned by or under the custody or control of health care benefit programs (as defined in 18 U.S.C. § 24(b)), in connection with the delivery of and payment for health care benefits, items or services.

(b)    As further explained herein, the defendant knew, or in some cases was deliberately ignorant, that this conspiracy entailed: (i) concealing from health care benefit programs Smith's ability to exercise control over the defendant, Alpha-Omega, and Zoetic; (ii) purchasing invalid prescriptions from Scott Roix and HealthRight; (iii) disguising the payments for those prescriptions as though they were payments for marketing services; (iv) patients were deceived through fraudulent internet ads and other means into providing their insurance information to Scott Roix and HealthRight; (v) HealthRight doctors were deceived into writing prescriptions for products the patients did not want and had not requested; (vi) vitamins were repackaged as prescription drugs; (vii) representing to the PBMs that the defendant, Alpha-Omega, and Zoetic were collecting patient copays through manufacturer coupons, which was false; (viii) patients were mailed unwanted products in interstate commerce (including from Florida to the Eastern District of Tennessee); and (ix) submitting claims to the PBMs for

Page 3 of 26

Initials of Duly Authorized
Representative of the Defendant    LS

payments for prescriptions obtained using the above-described means and that the vast majority of doctors issuing the prescriptions had not spoken to patients.

(c)    Entities called pharmacy benefit managers, including Express Scripts, CVS Caremark, Optum, Prime Therapeutics, MedImpact, and others (each a "PBM" and collectively the "PBMs") paid not less than $24,919,254 to the defendant, Alpha-Omega, and Zoetic for prescriptions obtained using the above-described means. The defendant knew that these PBMs acted as agents of health care benefit programs, and paid the amount specified in this paragraph to the defendant, Alpha-Omega, and Zoetic using the money of private insurance companies and other health care benefit programs.

### *Straw Pharmacy Ownership*

(d)    Smith and Mihir Taneja ("Taneja") enlisted trusted persons to purchase Alpha-Omega in the summer of 2016, and the defendant and Zoetic in the summer of 2017, and act as the legal owners thereof, for the purpose of concealing from the PBMs Smith's ability to exercise control over the business, operations, and property of the defendant and those other pharmacies. Smith and Taneja arranged for these persons to acquire the defendant and those other pharmacies through loans personally guaranteed by Taneja and Smith. Smith did this because he knew that if the PBMs were aware that he controlled the defendant and these other pharmacies, they would likely terminate the contracts for these pharmacies. This was the case because Smith formerly owned a pharmacy called "Oldsmar" in Florida, where a search was conducted by the FBI in February 2015 and afterwards various PBMs terminated their contracts with Oldsmar.

(e)    Smith arranged for another person to purchase the defendant through loans personally guaranteed by Smith and Taneja. Smith similarly arranged for others to purchase

Page 4 of 26

Initials of Duly Authorized
Representative of the Defendant _US_

Alpha-Omega, and Zoetic. Smith was able to exercise control over their substantive business operations through his management company, Tanith. Among other things, Smith, through Tanith, was able to influence hiring, contracting, and purchasing decisions at the defendant, Alpha-Omega, and Zoetic. Smith was a signer on the bank accounts of the defendant and these other pharmacies as well and personally profited from the defendant's (and Alpha-Omega's and Zoetic's) operations.

   (f) The defendant, Alpha-Omega, and Zoetic are no longer operating businesses, have been or will be dissolved, and no longer have any income or earning capacity. The defendant, Alpha-Omega, and Zoetic no longer hold any financial assets.

   (g) The defendant, Alpha-Omega, and Zoetic were, in effect, the alter egos of Smith, who maintained ultimate control over the defendant, Germaine, and Zoetic despite the legal ownership by others.

   (h) Smith directly benefitted from any profits realized by the defendant, Alpha-Omega, and Zoetic. In effect, the defendant, Alpha-Omega, Zoetic, and their legal owners never obtained any profit that was independent of Smith.

***Prescription Purchases Disguised as Payments for Marketing Services***

   (i) Smith and Taneja then agreed to purchase doctor-authorized, purported prescriptions (for patients with insurance) from Scott Roix and HealthRight for the defendant, Alpha-Omega, and Zoetic. Specifically, in or about the Fall of 2016, Smith and Taneja agreed to purchase prescriptions for Inflated AWP Medications (as defined in paragraph 4(q)) for approximately $500 per prescription. Smith and Taneja continued to purchase invalid prescriptions for Inflated AWP Medications from Roix and HealthRight through the end of 2017.

Page 5 of 26

Initials of Duly Authorized
Representative of the Defendant *US*

(j)     Smith and Taneja knew that it was unlawful to purchase prescriptions and that the PBMs would not agree to reimburse for invalid prescriptions that had been purchased from a telemarketer. Thus, Smith arranged for the owners of the defendant, Alpha-Omega, and Zoetic to sign "marketing agreements" with Scott Roix and HealthRight. Those written "marketing agreements" were designed to make it appear that those pharmacy owners were purchasing marketing services from Scott Roix and HealthRight, but were actually a ruse to conceal the fact that Smith was purchasing (from Roix and HealthRight) invalid prescriptions for Inflated AWP Medications pre-selected by Smith and Taneja, in violation of state and federal law.

(k)     During the conspiracy, Smith paid approximately $5,166,737 to Roix and HealthRight to purchase thousands of invalid prescriptions for Inflated AWP Medications and then submitted bills to the PBMs for these invalid prescriptions. The funds Smith used to pay Roix and HealthRight were obtained by the defendant (and Alpha-Omega and Zoetic) by defrauding the PBMs in the manner described in this plea agreement.

(l)     Smith knew that the PBMs would not have paid the defendant, Alpha-Omega, and Zoetic for these prescriptions for Inflated AWP Medications had they known that Smith was purchasing the invalid prescriptions from Scott Roix and HealthRight.

### *Deceiving the Patients*

(m)     The defendant knew that a crucial part of the conspiracy required Roix and HealthRight to obtain patient health insurance information, since Smith and Taneja had agreed to pay Roix $500 per prescription *only for patients with insurance*. This was essential because the object of the conspiracy was to obtain money from health care benefit programs.

Initials of Duly Authorized
Representative of the Defendant  *LS*

(n)     The defendant knew or was deliberately ignorant of the fact that, in many instances, the patients did not actually want these medications.

(o)     Roix told Smith and Taneja during the conspiracy that Roix and HealthRight used a variety of techniques to induce patients to provide their insurance information, including by placing misleading ads on the internet that stated that the patients would receive things like CBD medications or would be enrolled in clinical research trials. The misleading advertising was used to get patients to provide insurance information.

(p)     Smith knew that the PBMs would not have paid the defendant, Alpha-Omega, and Zoetic, for these prescriptions had they known that the patients had been deceived into providing their insurance information.

### *Misleading the Doctors*

(q)     After obtaining the patient insurance information, the defendant knew that Roix had to obtain doctor-authorized prescriptions for these patients. The defendant knew that Roix misleadingly communicated patient information by a HealthRight telemarketer to the doctors by using a telemedicine platform that prepopulated the Inflated AWP Medications in the prescription field based on order of profitability, which indicated to the doctors that the patients had requested these medications, which was false.

(r)     The PBMs would not have paid the defendant, Alpha-Omega, and Zoetic for these prescriptions had they known that the doctors were misled into issuing them.

### *Inflated AWP Medications and Misbranded Vitamins*

(s)     As described above, as part of the conspiracy, Roix agreed to sell to the defendant doctor-authorized prescriptions for patients with health insurance. The defendant's arrangement with Roix, however, also required that the prescriptions that Roix sold to the

Page 7 of 26

Initials of Duly Authorized
Representative of the Defendant  *LS*

defendant be written for products pre-selected by Smith and Taneja before any doctor authorized any prescription.

(t)   Smith and Taneja pre-selected these medications based solely upon their profitability and low risk of possible harm if used by actual patients.  Among other things, Smith and Taneja instructed Roix to obtain prescriptions for the following products (each, an "Inflated AWP Medication"):

| Pharmacy | Purchase Date | National Drug Code | Drug | Unit Purchase Price | AWP | Markup |
|---|---|---|---|---|---|---|
| Alpha-Omega | 8/31/17 | 69336-0310-30 | Cifrazol | $65 | $895 | 1,227% |
| Alpha-Omega | 9/28/17 | 65162-0911-74 | Diclofenac Sodium 1.5% | $80 | $690 | 763% |
| Alpha-Omega | 8/31/17 | 69336-0113-10 | Fenortho 200 mg Capsule, 100ct | $150 | $1,167 | 678% |
| Alpha-Omega | 7/11/17 | 69336-0300-30 | Durachol | $65 | $677 | 942% |
| Alpha-Omega | 12/29/16 | 69336-0826-01 | Lidopril XR | $400 | $1,896 | 374% |
| Alpha-Omega | 7/11/17 | 62250-0677-30 | Mefenamic Acid 250mg, 30ct | $95 | $522 | 449% |
| Alpha-Omega | 6/15/17 | 69336-0103-35 | Lidocaine 5% | $35 | $374 | 969% |

(u)   The "Markup" column reflects the markup between the approximate amount that the PBMs paid the defendant, Alpha-Omega, and Zoetic for each prescription for the product versus the amount that the defendant paid to obtain these products.  This markup rendered the conspiracy profitable.

(v)   The defendant obtained all seven of these Inflated AWP Medications described above from Smith's company, ULD Wholesale, which obtained them from Taneja's and Kapoor's company, Sterling-Knight.  Five of those medications, Cifrazol, Fenortho, Durachol, Lidopril XR, and Lidocaine 5%, were purchased and then relabeled with Sterling-

Page 8 of 26

Initials of Duly Authorized
Representative of the Defendant  *LS*

Knight national drug codes. Two of the medications – Diclofenac Sodium 1.5% and Mefenamic Acid 250mg (30ct) – were distributed by Sterling-Knight under the original manufacturer's label and national drug codes.

(w)     Smith agreed with Taneja and Kapoor to purchase these products from Sterling-Knight using Smith's company ULD Wholesale.

(x)     Smith then transferred these products from ULD Wholesale to the defendant, Alpha-Omega, and Zoetic, and caused them to dispense and mail these products in interstate commerce after purchasing corresponding invalid prescriptions from Roix and HealthRight.

(y)     Two of these Sterling-Knight products – Durachol and Cifrazol – were vitamins that Taneja, Kapoor, and Sterling-Knight obtained for pennies, repackaged as prescription drugs, and then sold to Smith and ULD Wholesale so that Smith could transfer them to the defendant, Alpha-Omega, and Zoetic, which would then dispense them in interstate commerce. Smith used Tanith to bill the PBMs for these prescriptions for Durachol and Cifrazol that the defendant, Alpha-Omega, and Zoetic purchased from Roix, and the defendant, Alpha-Omega, and Zoetic frequently obtained well in excess of $1,000 for such claims from the PBMs as a result. In total, the defendant, Alpha-Omega, and Zoetic obtained at least $24,919,254 from the PBMs for billing for fraudulent prescriptions purchased from Roix for products distributed by Sterling-Knight, $6,843,501 of which was for Durachol and Cifrazol. The defendant knew Durachol and Cifrazol were misbranded because Taneja, Kapoor, and Sterling-Knight labeled and packaged them as prescription drugs.

(z)     On numerous occasions, Smith commissioned Roix to obtain prescriptions for Durachol and Cifrazol to be dispensed by the defendant, Alpha-Omega, and Zoetic. On

Initials of Duly Authorized
Representative of the Defendant  LS

many occasions, Smith caused the defendant, Alpha-Omega, or Zoetic to bill the PBMs for Cifrazol, even though the prescription was for Durachol, because Cifrazol was even more profitable than Durachol.

(aa)  During the conspiracy, Smith caused his company, ULD Wholesale – using money that Smith transferred from the bank accounts of the defendant, Alpha-Omega, and Zoetic to the bank accounts of ULD Wholesale – to pay Sterling-Knight, Taneja, and Kapoor approximately $6,168,398.  All of these funds were proceeds obtained from the PBMs as part of the conspiracy to defraud described in this plea agreement.

### *Patient Copays and So-Called Manufacturer Coupons*

(bb)  Smith knew that when billing the PBMs for prescriptions, the defendant, Alpha-Omega, and Zoetic were required to collect patient copays, and that if they were not able to do so, the PBMs could terminate the defendant's (and Alpha-Omega's and Zoetic's) ability to bill for prescriptions.  However, Smith (and Taneja, Kapoor, and Sterling-Knight) also knew that the vast majority of the patients would not actually pay the copays for the Inflated AWP Medications.

(cc)  To address this problem, Smith agreed with Kapoor and Taneja to make it appear as though Sterling-Knight paid a "manufacturers' coupon" for the full amount of each patient copay for the thousands of prescriptions that the defendant, Alpha-Omega, and Zoetic purchased from Roix.  To effectuate this plan, Taneja and Kapoor caused Sterling-Knight to establish a relationship with a third-party manufacturers' coupon rebate facilitator ("Rebate Facilitator #1").  Rebate Facilitator #1 was already in the business of processing legitimate manufacturers' coupons on behalf of pharmaceutical manufacturers and paying the proceeds

Initials of Duly Authorized
Representative of the Defendant  *LS*

obtained from the manufacturers to pharmacies that were able to submit the manufacturers' coupon.

(dd) In a *bona fide* manufacturers' coupon: (i) the patients bring the coupon to the pharmacy, having obtained it directly or indirectly from a doctor or the manufacturer; (ii) the pharmacy submits an electronic claim to Rebate Facilitator #1 with the presented coupon code; (iii) Rebate Facilitator #1 cross-references the coupon code with its list of enrolled pharmaceutical manufacturers to determine how much to pay the pharmacy for the copay coupon; (iv) Rebate Facilitator #1 then pays the coupon amount to the pharmacy with a remittance indicating that the payment is for the patients' copay; and (v) Rebate Facilitator #1 then collects that copay coupon amount from the manufacturer, which bears the economic cost of the copay coupon.

(ee) In this situation, however, as the defendant knew, the patients never spoke to a doctor about a coupon, never heard of Sterling-Knight, and never knowingly presented any coupon to or otherwise had any interaction with the defendant, Alpha-Omega, or Zoetic. Moreover, the defendant, Alpha-Omega, and Zoetic, not the manufacturer (Sterling-Knight), funded the entirety of the copay coupon.

(ff) To do this, Taneja and Kapoor provided Sterling-Knight's manufacturer's coupon code directly to Smith who, in turn, caused the defendant, Alpha-Omega, and Zoetic to submit claims using Sterling-Knight's coupon to Rebate Facilitator #1 for almost all prescriptions purchased from Roix. Rebate Facilitator #1 processed those coupons, obtained reimbursement from Sterling-Knight, and paid the resulting amount to the defendant, Alpha-Omega, and Zoetic.

Initials of Duly Authorized
Representative of the Defendant _L S_

(gg)     But, although Sterling-Knight paid Rebate Facilitator #1, it didn't bear the economic cost of that payment.  Instead, Smith, through ULD Wholesale, built the cost of the coupon into the prices that he charged the defendant, Alpha-Omega, and Zoetic to purchase the underlying products.  Taneja and Kapoor, upon receiving invoices from Rebate Facilitator #1, simply forwarded those invoices to Smith and told him to pay them, which Smith did by paying those invoices from ULD Wholesale's bank accounts using money Smith withdrew from the defendant's, Alpha-Omega's, and Zoetic's bank accounts (containing funds obtained by defrauding the PBMs in the first instance).  Later, Smith caused ULD Wholesale to pay Rebate Facilitator #1 directly (skipping Sterling-Knight entirely), again using money that Smith withdrew from the defendant's, Alpha-Omega's, and Zoetic's bank accounts.

(hh)     Thus, Smith, Taneja, and Kapoor ultimately transferred money from the defendant, Alpha-Omega, and Zoetic *back* to the defendant, Alpha-Omega, and Zoetic ostensibly in the form of a manufacturer's copay coupon, all for the purpose of obtaining the remittance indicating that the patients' copays had been paid by the patient or by the manufacturer in the form of a coupon, which was false.  This was done for the purpose of defrauding the PBMs into believing that the patient copays had been paid by the manufacturer through a coupon or by the patient, which was false.

(ii)     In sum, Smith and the defendant, Alpha-Omega, and Zoetic paid the patients' copays to themselves, as Sterling-Knight did not bear the economic cost of what was purported to be a manufacturer's coupon.  The purpose of the coupon was to disguise the nature and origin of the payment and to pass it off, falsely, as a *bona fide* manufacturer's coupon that had not been paid for by Smith, the defendant, Alpha-Omega, or Zoetic.  During the conspiracy, the defendant (and Alpha-Omega and Zoetic) repeated this process for the full amount of

Initials of Duly Authorized
Representative of the Defendant  *LS*

thousands of patient copays for prescriptions purchased from Roix. In total, the defendant (and Alpha-Omega and Zoetic), Taneja, and Smith transferred approximately $1,184,401 from the defendant (or Alpha-Omega or Zoetic) through Smith, ULD Wholesale, Sterling-Knight, and Rebate Facilitator #1, then back to the defendant (or Alpha-Omega or Zoetic) for this purpose.

(jj)     The defendant knew that had the PBMs known that the defendant, Alpha-Omega, and Zoetic were controlled by Smith and were not, in fact, collecting copays from the patients but instead were applying a coupon funded by the defendant, Alpha-Omega, and Zoetic, the PBMs would have terminated those pharmacies.

### Billing for Prescriptions Issued Absent Patient Contact with Physicians

(kk)     Throughout the conspiracy, the defendant knew the vast majority of doctors issuing the prescriptions had not spoken to patients.

(ll)     Nevertheless, from on or about the fall of 2016 through November 2017 the defendant, Alpha-Omega, and Zoetic submitted thousands of claims for payment to the PBMs for prescriptions purchased from Roix. As a result, the defendant, Alpha-Omega, and Zoetic caused the PBMs to pay approximately $24,919,254 to the defendant, Alpha-Omega, and Zoetic, $16,217,104 of which was for Sterling-Knight products and $8,702,150 of which was distributed by Sterling-Knight under the original manufacturer's labels and national drug codes. The defendant intentionally concealed pertinent facts from the PBMs because the defendant knew that if they were aware of these facts (including Smith's involvement in the defendant's operations, how patients were deceived, how doctors were deceived, the absence of doctor-patient contact, how products were misbranded, how prescriptions were purchased, and how patient copays were funded through coupons paid by the defendant) they wouldn't have paid for these prescriptions.

Page 13 of 26

Initials of Duly Authorized
Representative of the Defendant    LS

(mm)   The defendant helped transfer these fraudulently-obtained proceeds directly and indirectly to various other bank accounts including, in particular, not less than $2,350,000 to JPMorgan Chase Bank, account number xxxx3721, $409,498.54 to JPMorgan Chase Bank, account number xxxxx5212, and $37,523.38 to JPMorgan Chase Bank, account number xxxxx1500. Smith also left fraudulently obtained proceeds in the amount of $226,635.55 in JPMorgan Chase Bank, account number xxxxx9802 and $28,557.85 in JPMorgan Chase Bank, account number xxxxx9810.

(nn)   In furtherance of the conspiracy, the defendant, Alpha-Omega, and Zoetic caused thousands of medications, prescribed via the above fraudulent scheme, to be mailed from Florida throughout the United States, including to the Eastern District of Tennessee. For example, on or about September 19, 2017, Smith, with the intent to defraud and deceive, and utilizing his control over the defendant, Alpha-Omega, and Zoetic in furtherance of the scheme, introduced, delivered, and caused to be introduced and delivered, into interstate commerce from Florida to the Eastern District of Tennessee, Cifrazol 3,775-1mg cap (69336-0310-30), a drug that was misbranded in that its labeling was false and misleading (including, without limitation, in that it stated falsely that the product could only be taken pursuant to a prescription) and was dispensed to patient B.N. without a valid prescription of a practitioner licensed by law to administer such drug, which the defendant caused to be billed fraudulently to CVS Caremark and for which CVS Caremark paid the defendant approximately $1,464.

5.   The defendant is pleading guilty because the defendant is in fact guilty.  The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

(a)   the right to plead not guilty;

Initials of Duly Authorized
Representative of the Defendant _____ LS

(b)     the right to a speedy and public trial by jury;

(c)     the right to assistance of counsel at trial;

(d)     the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

(e)     the right to confront and cross-examine witnesses against the defendant;

(f)     the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

(g)     the right not to testify and to have that choice not used against the defendant.

6.     The parties agree that the appropriate disposition of this case would be the following as to each count:

(a)     The Court may impose any lawful term of probation and any lawful fine up to the statutory maximums.  Pursuant to Rule 11(c)(1)(B), and in consideration of the terms of this plea agreement (and taking into account the provisions of 18 U.S.C. § 3571(c) and (d)) and the policy statement set forth in U.S.S.G. § 6B1.2(b) and related commentary, USATNE, USDOJ-CPB, and the defendant agree and stipulate, and agree to recommend at the time of sentencing, that any fine imposed by the Court not exceed $500,000.

(b)     The Court will impose special assessment fees as required by law.

(c)     The Court may order forfeiture as applicable (see paragraph 9) and restitution as appropriate (see paragraph 10).

(d)     No promises have been made by any representative of USATNE or USDOJ-CPB to the defendant as to what the sentence will be in this case.  Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential

Page 15 of 26

Initials of Duly Authorized
Representative of the Defendant _LS_

sentence in this case are not binding on the Court, and may not be used as a basis to rescind this agreement or withdraw the defendant's guilty plea. The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

7.      Given the defendant's agreement to plead guilty, USATNE and USDOJ-CPB will not oppose a two-level reduction for acceptance of responsibility under the provisions of § 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to § 3E1.1(a), USATNE and USDOJ-CPB, at or before the time of sentencing, agree to move the Court to decrease the offense level by one additional level pursuant to § 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense, including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, USATNE and USDOJ-CPB will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under § 3E1.1 of the Sentencing Guidelines.

8.      The defendant agrees to pay the special assessment in this case prior to sentencing.

Page 16 of 26

Initials of Duly Authorized
Representative of the Defendant    L S

9.      Unless otherwise limited by an agreed preliminary order of forfeiture, the defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture as proceeds of the defendant's criminal activities which are in the possession or control of the defendant or the defendant's nominees in violation of Title 18, United States Code, Section 1349. The defendant agrees to forfeit the defendant's interest, if any, in the following:

- $409,498.54 U.S. currency seized on October 12, 2018, from JPMorgan Chase Bank, account number xxxxx5212, in the name of ULD Wholesale Group, Inc.;

- $226,635.55 U.S. currency seized on October 12, 2018, from JPMorgan Chase Bank, account number xxxxx9802, in the name of Alpha-Omega Pharmacy, LLC;

- $37,523.38 U.S. currency seized on October 12, 2018, from JPMorgan Chase Bank, account number xxxxx1500, in the name of Tanith Enterprises, LLC;

- $28,557.85 U.S. currency seized on October 12, 2018, from JPMorgan Chase Bank, account number xxxxx9810, in the name of Alpha-Omega Pharmacy, LLC; and

- $2,350,000.00 U.S. currency seized on November 7, 2018, from JPMorgan Chase Bank, account number xxxx3721, in the name of Taewa L. Smith Revocable Trust.

In the event that any of the above-described funds are, in fact, forfeited to the United States, the United States agrees to request that such forfeited funds be used to restore the victims or remit to the victims as set forth in paragraph 10. The parties acknowledge that the decision to grant or deny the restoration or remission request rests solely with the Attorney General.

The defendant agrees to assist the United States fully in the identification, recovery, and return to the United States of any other assets or portions thereof subject to forfeiture. The defendant further agrees to make a full and complete disclosure of all assets over which the defendant exercises control and those which are held or controlled by a nominee. The defendant

Page 17 of 26

Initials of Duly Authorized
Representative of the Defendant ⟍⟋

further agrees to forfeit all interests as described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and the signing of any other documents necessary to effectuate such transfers. The defendant further agrees not to object to any civil or criminal forfeiture brought against these properties. Finally, the defendant agrees to take all such steps to locate such property and to pass title to the United States before the defendant's sentencing.

10.     The defendant agrees that the Court shall order restitution, pursuant to any applicable provision of law, for any loss caused to: (1) the victim(s) of any offense charged in this case (including dismissed counts); and (2) the victim(s) of any criminal activity that was part of the same course of conduct or common scheme or plan as the defendant's charged offense. Pursuant to 18 U.S.C. § 3663(a)(3) and Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the defendant, USATNE, and USDOJ-CPB agree and stipulate, and agree to recommend, that the defendant be responsible for restitution in a total amount of $24,919,254, to be paid to the victims in this case, i.e., the health care benefit programs, as determined by the United States at or prior to sentencing, and that the Court should enter a restitution order accordingly. This amount is apportioned to the defendant under 18 U.S.C. § 3664(h) to reflect the defendant's role in the conspiracy (as described in this plea agreement and First Superseding Indictment), including the fact that the defendant (and related pharmacies and companies) imposed a loss on the victims equal to this amount. USATNE, USDOJ-CPB, and the defendant agree that the Court should order that this restitution consist of two parts: (i) $3,937,468 for which the defendant should be responsible jointly and severally with Larry Smith, Alpha-Omega, Zoetic, Tanith, and ULD Wholesale, which amount equals the total victim payments to the

Initials of Duly Authorized
Representative of the Defendant   LS

defendant, Alpha-Omega, and Zoetic (excluding amounts paid by the victims for products branded with Sterling-Knight's labeler code to any pharmacy in the conspiracy); and (ii) $20,981,786 for which the defendant should be responsible jointly and severally with Sterling-Knight, Arun Kapoor, Mihir Taneja, Larry Smith, Alpha-Omega, Zoetic, Tanith, and ULD Wholesale, which amount equals the total victim payments to the defendant, Alpha-Omega, and Zoetic not accounted for in sub-clause (i) (and which amount is set forth in paragraph 9 of the plea agreement in *United States v. Mihir Taneja* (2:20-CR-111), paragraph 9 of the plea agreement in *United States v. Arun Kapoor* (2:20-CR-110), paragraph 9 of the plea agreement in *United States v. Sterling-Knight Pharmaceuticals LLC* (2:20-CR-113), and paragraph 10, sub-clause (ii) of the plea agreement of Larry Smith filed as document 296 in *United States of America v. Andrew Assad et al* (2:18-CR-140)).

11.     The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court.  The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately.  If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution.  The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate.  The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel.  In order to facilitate the collection of financial obligations to be imposed

Initials of Duly Authorized
Representative of the Defendant  LS

with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

(a) If so requested by USATNE or USDOJ-CPB, the defendant will promptly submit a completed financial statement to the United States, in a form it or they provide and as it or they direct. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

(b) The defendant expressly authorizes USATNE or USDOJ-CPB to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

(c) If so requested by USATNE or USDOJ-CPB, the defendant will promptly execute authorizations on forms provided by USATNE or USDOJ-CPB to permit USATNE or USDOJ-CPB to obtain financial and tax records of the defendant.

12. The defendant understands that if the defendant holds any regulatory licenses or permits, or is contracted with any federal, state, or local governmental entity, the conviction in this case may result in the suspension or revocation of those licenses and permits or the termination of those contracts. The defendant understands that the defendant may not use anticipated or unanticipated collateral consequences such as those described in this paragraph as a basis for withdrawing the defendant's guilty plea.

13. The defendant agrees that, effective upon the later to occur of either the sentence of the defendant in this matter or January 1, 2022, it shall not engage in the dispensing of any drugs for the duration of any term of probation assigned by the Court in this matter. In the

Initials of Duly Authorized
Representative of the Defendant  LS

interim, to the extent that the defendant does engage in the dispensing of any drugs, the defendant also agrees that it shall adopt reasonable policies and procedures to ensure that it and its employees do not commit further violations of any federal law and do not facilitate the commission of fraud or deceit against any health care benefit program in connection with the sale, distribution, or dispensing of any drug. These policies and procedures shall ensure, among other things, that the defendant: (a) does not dispense misbranded drug; (b) does not obtain any prescription through unlawful means; (c) does not submit any claim for payment to any health care benefit program for any unlawfully-obtained prescription or prescription issued absent a valid practitioner-patient relationship, or for any prescription for a misbranded drug; (d) does not promote, sponsor, facilitate, or utilize any copay coupon program, or other similar program, except to the extent that such copay coupon complies with all applicable laws and regulations; and (e) takes reasonable measures to ensure that any copay coupon program, or other similar program, promoted, sponsored, or facilitated by any entity under common ownership or control as the defendant is not used by the defendant to subvert any obligation under any provider manual, provider agreement, or other agreement governing the relationship between the defendant and any health care benefit program, or to defraud or deceive any health care benefit program. The defendant shall ensure that all its employees are aware of and familiar with these policies and procedures on at least an annual basis.

14. The defendant represents that the defendant is a defunct corporate entity, has no assets or has de minimis assets, and that it has no parent companies or successor entities or persons. It is understood, however, that this agreement binds the defendant, any successor entities, parent companies to the extent they assume the liabilities contained herein and any other person or entity that assumes the liabilities contained herein ("successors-in-interest"). The

Page 21 of 26

Initials of Duly Authorized
Representative of the Defendant _LS_

defendant, or its successors-in-interest, if applicable, shall provide USATNE and USDOJ-CPB with immediate notice of any name change, business reorganization, sale or purchase of assets, divestiture of assets, or similar action affecting the defendant's ability to pay any fine ordered by the Court or affecting this agreement. No change in name, change in corporate or individual control, business reorganization, change in ownership, merger, change of legal status, sale or purchase of assets, or similar action shall alter the defendant's responsibilities under this agreement. The defendant shall not engage in any action to seek to avoid the obligations and conditions set forth in this agreement. If such transaction or series of transactions has the effect of circumventing or frustrating the purposes of this agreement, as determined in the sole discretion of USATNE or USDOJ-CPB, it shall be deemed a breach of this agreement.

15.    The defendant acknowledges that the principal benefits to USATNE and USDOJ-CPB of this agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by USATNE or USDOJ-CPB in this agreement and as a demonstration of the defendant's acceptance of responsibility for the offense committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

(a)    The defendant will not file a direct appeal of the defendant's conviction or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

Initials of Duly Authorized
Representative of the Defendant    *LS*

(b)     The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

(c)     The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

16.     This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. The defendant's signature on this plea agreement constitutes the defendant's admission that the facts contained herein are true and accurate. If USATNE or USDOJ-CPB violate the terms of this agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this agreement in any way (including, without limitation, by failing to enter a guilty plea as agreed herein, moving to withdraw guilty plea after entry, or by violating any court order or any local, state, or federal law pending the resolution of this case), then USATNE or USDOJ-CPB will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, USATNE or USDOJ-CPB may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges that USATNE or USDOJ-CPB agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to prosecution for the conduct contemplated by this

Page 23 of 26

Initials of Duly Authorized
Representative of the Defendant  *US*

agreement. The defendant also understands and agrees that a violation of this agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea in this case.

17. USATNE and USDOJ-CPB will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

18. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charges, and there are no other agreements, promises, undertakings, or understandings between the defendant and USATNE and USDOJ-CPB. The parties understand and agree that the terms of this agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

\* \* \* \* \*

Page 24 of 26

Initials of Duly Authorized
Representative of the Defendant  _US_

FRANCIS M. HAMILTON III
ACTING UNITED STATES ATTORNEY

**For USATNE:**

Date: 9/10/2021

By: _____
Timothy C. Harker
Assistant United States Attorney

Date: 9/10/2021

By: _____
Mac D. Heavener, III
Assistant United States Attorney

**For USDOJ-CPB:**

Date: 9/10/2021

_____
David L. Gunn
Trial Attorney
U.S. Department of Justice
Consumer Protection Branch

**For the Defendant:**

Date: _____

_____
Larry Everett Smith
Duly Authorized Representative of the
defendant Germaine Pharmacy Inc.

Date: September 9, 2021

_____
Stephen Ross Johnson
Attorney for the Defendant

Signature Page to Germaine Pharmacy Inc. Plea Agreement

## Certification of the Defendant

I have been duly authorized according to the bylaws and relevant organizational documents of the defendant Germaine Pharmacy Inc. ("the defendant") to enter into this agreement on behalf of the defendant. I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with the defendant's attorney. I understand the terms of this agreement, and I voluntarily agree to those terms on behalf of the defendant. I have discussed the evidence with the defendant's attorney, and defendant's attorney has advised me of defendant's rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me or to the defendant other than those contained in this agreement. No one has threatened or forced me or the defendant in any way to enter into this agreement. I am satisfied with the representation of the defendant's attorney in this matter, and I am pleading guilty on behalf of the defendant because the defendant is guilty of the charge and wishes to take advantage of the promises set forth in this agreement, and not for any other reason.

_____
Larry Everett Smith
Date: 09-09-2021

A duly authorized representative of the
defendant Germaine Pharmacy Inc.